# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WRIGHT-RYAN CONSTRUCTION, INC.<br><br>and<br><br>THE WRIGHT-RYAN CONSTRUCTION, INC. EMPLOYEE STOCK OWNERSHIP 401(K) PLAN<br><br>Plaintiffs,<br>v.<br><br>RETIREMENT DIRECT, LLC<br><br>Defendant. | Case No. 8:23-cv-290<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Wright-Ryan Construction, Inc., ("Wright-Ryan") is a Maine corporation with its principal place of business in Maine.

2.      Plaintiff The Wright-Ryan Construction, Inc. Employee Stock Ownership 401(k) Plan (the "Plan") is a plan sponsored by Wright-Ryan, and is successor to the Wright-Ryan Construction, Inc. 401(k) Profit Sharing Plan.

3.      Defendant Retirement Direct, LLC ("RET") is a Nebraska corporation with its principal place of business in North Carolina. RET provides retirement plan administration and recordkeeping services, including, without limitation, plan document services, plan conversion services, and compliance testing to ensure compliance with plan document requirements and applicable laws, including but not limited to 26 U.S.C., Subtitle A, Chapter 1, Subchapter D, Part I, and the regulations thereunder governing pension, profit-sharing, stock bonus plans, and the like.

1

4. The amount in controversy exceeds $75,000.00.

5. This Court has diversity jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and because the amount in controversy exceeds $75,000.00.

6. This Court also has federal question jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1331, because RET breached fiduciary duties to Plan participants and beneficiaries under the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

7. Venue in this Court is proper because the contract between Wright-Ryan and RET described in this Complaint specifies that if either party elects to pursue legal action against the other for any obligation under the contract such action shall be brought in the State of Nebraska.

## FACTS COMMON TO ALL COUNTS

8. At least some of the professional services provided by RET to Wright-Ryan and the Plan that are the subject of this action were undertaken pursuant to the contract by and between the Parties that began in 2012 (the "Contract").

9. Wright-Ryan is the sponsor of the Plan, originally adopted in 1992. From 2012 through 2021, Wright-Ryan retained RET to assist Wright-Ryan in administering the Plan for the benefit of Plan participants by maintaining Plan records, providing required computations, and conducting annual compliance tests. RET also provided professional services to Wright-Ryan to facilitate converting the Plan to a safe harbor plan in 2015, including providing Wright-Ryan with Plan documents to effectuate the conversion. Wright-Ryan retained RET to provide those services because Wright-Ryan did not have the expertise to perform them itself.

10. In offering its services to Wright-Ryan, RET represented that it had the expertise to perform those services in a competent and professional manner. Wright-Ryan and the Plan relied on RET's expertise and professional opinions when annually certifying that Wright-Ryan complied with Plan requirements and applicable law.

11. Upon entering into the Contract, Wright-Ryan began using Plan documents provided by RET or one of its affiliates at RET's request.

12. From 2012 to 2021, RET provided professional computations and compliance assessments involving the annual contributions to be made under the Plan by Wright-Ryan. When Wright-Ryan, with RET's assistance, converted the Plan to a safe harbor plan in 2015, the converted Plan required that Wright-Ryan make contributions based on total compensation (salary plus bonuses).

13. After the safe harbor conversion and in each Plan year through 2021 (with adverse effects extending into 2022), RET applied compliance tests incorrectly and, consequently, provided Wright-Ryan and the Plan with inaccurate assessments of compliance with Plan requirements, stating that "no corrective action is required."

14. By facilitating the conversion to a safe harbor plan, RET had actual knowledge of the 2015 Plan conversion and corresponding changes in Plan requirements. RET also knew, or reasonably should have known, that it was necessary for RET to adjust its compliance tests and corresponding provisions in the Contract to account for post-conversion Plan requirements and applicable law.

15. RET did not adjust its compliance tests or the corresponding provisions in the Contract to account for post-conversion Plan requirements and applicable law, including safe harbor compliance testing.

16. Wright-Ryan made contributions to the Plan until 2022—both before and after the conversion to a safe harbor plan—in reliance on RET's computations and representations that Wright-Ryan's contributions complied with Plan requirements and applicable law.

17. Wright-Ryan terminated its contract with RET in early 2022 and hired another recordkeeper/third-party administrator, Blue Ridge ESOP Associates, LLC ("Blue Ridge"), to replace RET. Shortly thereafter, Blue Ridge informed Wright-Ryan that, contrary to RET's representations and compliance test results, Wright-Ryan's contributions to the Plan did not comply with Plan requirements or applicable law. After performing additional review—with the assistance of Blue Ridge—Wright-Ryan determined that the Plan was non-compliant <u>in each Plan year after the conversion</u> to a safe harbor plan.

18. Upon discovering the non-compliant contributions, Wright-Ryan promptly investigated the issue and retained outside counsel and accounting services at significant expense to advise Wright-Ryan regarding corrective action. Corrective action also required, and continues to require, many hours of Wright-Ryan's and the Plan's management and trustee effort.

19. RET knew that Wright-Ryan and the Plan were relying on its advice concerning compliance and in performing Wright-Ryan's fiduciary duties to the Plan. RET's compliance services were an integral part of Wright-Ryan's and the Plan's efforts to fulfill their fiduciary duties to Plan participants under ERISA.

20. As a direct result of RET's compliance test errors, and misrepresentations, Wright-Ryan failed to operate in accordance with Plan requirements and applicable law until 2022. Consequently, the Plan has lost or will lose its tax-favored status unless corrective action acceptable to the IRS is taken.

21. Loss of the Plan's tax-favored status would present significant financial implications for Wright-Ryan and the Plan and may result in a substantial loss of retirement benefits for Plan participants.

22. Wright-Ryan and the Plan have incurred, and will continue to incur, significant expenses because of RET's wrongful errors and omissions.

## COUNT I

### (Wright-Ryan's Claim for Breach of Contract)

23. Wright-Ryan incorporates by reference each and every allegation of paragraphs 1 through 22 above.

24. Under the Contract, RET was obligated to carefully review the Plan each year and to provide: (i) recurring plan document services, (ii) periodic conversion services, and (iii) annual computational and compliance services assessing Wright-Ryan's compliance with Plan requirements and applicable law.

25. Wright-Ryan has performed all its obligations under the Contract. Among other things, Wright-Ryan has paid RET substantial fees for its professional services, which include annual assessments of Wright-Ryan's compliance with Plan requirements and applicable law.

26. RET breached the Contract by, among other things, erroneously advising Wright-Ryan that Wright-Ryan had complied with Plan requirements and all applicable laws through 2021, and this erroneous advice adversely affected Wright-Ryan through early 2022

27. As a direct and proximate result of RET's breach of the Contract, Wright-Ryan has suffered substantial damages.

## COUNT II

### (Wright-Ryan's Claim for Negligence)

28. Wright-Ryan incorporates by this reference each and every allegation of paragraphs 1 through 27 above.

29. As a third-party administrator and professional record-keeper that undertook to perform compliance, plan conversion, recordkeeping, and documentation services, RET owed a duty to Wright-Ryan to exercise reasonable care in the performance of its services.

30. Upon information and belief, RET claims that it owed Wright-Ryan no duty under the Contract to exercise discretion or judgment regarding Wright-Ryan's compliance with Plan requirements and applicable law. Nonetheless, RET did, in fact, exercise discretion and judgment in confirming Plan compliance and did so independent of the Contract.

31. RET failed to meet the applicable standard of care with respect to the compliance services it provided to Wright-Ryan by, among other things, erroneously assessing Wright-Ryan's contributions as compliant with Plan requirements and applicable laws each year through 2021, with adverse effects on Wright-Ryan into 2022, despite the conversion to a safe harbor plan and the change in the Plan's contribution requirements attendant to that conversion.

32. Wright-Ryan has suffered substantial damages as a direct and proximate result of RET's failure to exercise reasonable care in the performance of its obligations to Wright-Ryan.

## COUNT III

### (Wright-Ryan's Claim for Negligent Misrepresentation)

33.  Wright-Ryan incorporates by this reference each and every allegation of paragraphs 1 through 32 above.

34.  RET made misrepresentations to Wright-Ryan with the intention of inducing Wright-Ryan to act in reliance on those misrepresentations and with the expectation that Wright-Ryan would so act. Wright-Ryan placed its trust and confidence in RET to (i) read the Plan in effect each year; and (ii) fulfill its obligations under the Contract and aside from the Contract in accordance with applicable professional standards of care, including accurately assessing Wright-Ryan's compliance with Plan requirements and applicable law each year—both before and after the 2015 conversion to a safe harbor plan.

35.  RET's annual representations to Wright-Ryan regarding Plan years through 2021, including the compliance test assurance that "no corrective action is required," were not true, and RET made the representations and gave those assurances without a reasonable basis to believe they were true.

36.  Wright-Ryan's post-safe harbor contributions to the Plan were substantially less for each Plan year through 2021 and part of Plan year 2022 than required by the Plan and applicable law.

37.  Wright-Ryan was unaware of the falsity of RET's representations and reasonably relied on RET's representations by, among other things, continuing to retain RET to provide annual compliance assessments based on RET's representations that it had the expertise to perform those services in a competent and professional manner.

## COUNT IV

### (The Plan's Claim for Breach of Fiduciary Duty)

38. The Plan incorporates by this reference each and every allegation of paragraphs 1 through 37 above.

39. RET was a fiduciary to Plan participants under 29 U.S.C. § 1002(21)(A) with respect to the compliance testing it performed because it exercised its independent, professional judgment in so doing, Specifically RET exercised "discretionary authority" with respect to Plan management and administration in: (i) providing Wright-Ryan with documents for the safe-harbor Plan, (ii) providing services outside of those contemplated in the Contract, (iii) choosing the compliance tests to be performed, (iv) determining the information required to perform those tests, and (v) choosing the formula(e) for such performance.

40. RET had a fiduciary duty to adjust its services after the 2015 safe harbor plan conversion to ensure compliance with the converted Plan's requirements and applicable law.

41. Independent of the Contract, RET assumed that fiduciary duty by representing to Wright-Ryan and the Plan that it was performing safe-harbor specific tests, actually performing those tests, and annually communicating to Wright-Ryan that "no corrective action is required." By repeatedly performing the compliance testing incorrectly, and by providing Wright-Ryan with erroneous compliance information during that same period, RET violated its fiduciary duty to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," as required under 29 U.S.C. § 1104(a)(1)(B).

42. By performing the compliance testing in a manner that contradicted the terms of the governing Plan document, RET violated its fiduciary duty to discharge its duties, "in accordance with the documents and instruments governing the plan insofar as such documents and

instruments are consistent with the provisions of [ERISA]," as required under 29 U.S.C. § 1104(a)(1)(D).

43. As a direct and proximate result of RET breach of fiduciary duties as herein alleged, the Plan has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Wright-Ryan and the Plan seek judgment:

1. Awarding damages to Wright-Ryan for RET's breach of contract, negligence and negligent misrepresentation; and restitution to the Plan for RET's breach of fiduciary duty;

2. For costs of suit, including attorneys' fees to the extent allowed by law; and

3. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Wright-Ryan and the Plan demand trial by jury in Omaha as to all claims asserted in this Complaint.

Dated: July 5, 2023

/s/Steven D. Davidson
Steven Davidson (#18684)
Brian Barmettler (#27017)
Baird Holm LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102-2068
sdavidson@baridholm.com
bbarmettler@bairdholm.com

George F. Burns, Esq. (*pro hac vice request to come*)
Samuel X. Frank, Esq. (*pro hac vice request to come*)
Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street
P.O. Box 9729
gburns@bernsteinshur.com
sfrank@h@bernsteinshur.com

*Attorneys for Wright-Ryan Construction, Inc.*